**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed October 21, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00260-CV

---

### ROSALIND JOHNSON, Appellant

### V.

### GERMAN GUERRA, Appellee

---

**On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 18-CV-0891**

---

## MEMORANDUM OPINION

This is a dispute over ownership of property. Rosalind Johnson sued German Guerra for adverse possession and trespass, and Guerra countersued Johnson for trespass. After the parties filed competing motions for summary judgment, the trial court rendered summary judgment in favor of Guerra. Concluding that Johnson's summary judgment evidence created genuine issues of material fact on her adverse possession claim and the trial court granted more relief than requested, we affirm

the trial court's judgment in part, reverse in part, and remand for further proceedings.

## *Background*

In 1973, two parcels of land were split into north and south lots and divided between two sisters.

- **The North Lot**. The north lot was sold to the City of Galveston in a tax sale in 1998. The city conveyed the north lot to Bruce Kintgen in 2001, who along with his wife Vicky Jo Kintgen, conveyed it to Galveston Housing Finance Corporation in 2006. Galveston Housing Finance Corporation conveyed the north lot to Guerra in 2018.

- **The South Lot**. Johnson and her brother inherited the south lot in 1999, and Johnson's brother conveyed his interest in the south lot to Johnson in 2000.

The dispute in this case involves a garage apartment. The garage apartment is located on the north lot, but Johnson and her predecessors purportedly believed it was on the south lot. Galveston County tax records between 1989 and 2018 indicate that the garage apartment was part of the south lot, but a handwritten note on a 2018 property appraisal information sheet indicates that the garage apartment was the "same building assessed" on the north lot. Johnson asserts that the garage apartment has been included with the south lot in the tax records since 1987 and she has paid taxes on the garage apartment since the time she inherited the property. She also contends that she rented the garage apartment to tenants until 2009 or 2010 and she was using the garage apartment for storage at the time Guerra purchased the north lot.

Guerra surveyed the property and discovered that the garage apartment was on the north lot. He then began to make improvements to the garage apartment and moved into it. One water meter had regulated water use at both the garage

2

apartment and a house on the south lot since 1973. Johnson had a new water meter installed after Guerra took over the garage apartment.

We have included the following vertical timeline for clarity:

**1973**—Property was partitioned into north and south lots and conveyed respectively to Luebirda Wilson and Mary Brown.
**1985**—Annie Dean Mack Wilson inherited south lot.
**1991**—Ruthie Simmons inherited south lot.
**1998**—North lot was sold in tax sale to City of Galveston.
**1999**—Rosalind Johnson and Reginald Simmons inherited south lot.
**2000**—Simmons conveyed his interest in south lot to Johnson.
**2001**—City of Galveston conveyed north lot to Bruce Kintgen.
**2006**—Bruce and Vicky Jo Kintgen conveyed north lot to Galveston Housing Finance Corporation.
**2018**—Galveston Housing Finance Corporation conveyed north lot to German Guerra.

Johnson sued Guerra and sought a declaratory judgment that the garage apartment was part of the south lot or alternatively that Johnson had acquired the garage apartment through adverse possession.[1] Johnson also brought a claim for trespass and related damages, and Guerra brought a counterclaim for trespass and related damages.[2] Johnson moved for partial summary judgment on her adverse possession claim and Guerra's counterclaim for trespass. Guerra filed a competing motion for summary judgment on Johnson's adverse possession claim but did not move for summary judgment on his trespass counterclaim. Guerra argued that real property owned by governmental entities cannot be adversely possessed and thus the applicable ten-year period for adverse possession was interrupted by Galveston

---

[1] The adverse possession claim is in substance a claim for trespass to try title by adverse possession. *See, e.g., Brumley v. McDuff*, 616 S.W.3d 826, 834 (Tex. 2021).

[2] Johnson alleged that if she owned the garage apartment, she was entitled to damages against Guerra for trespassing on the property.

Housing Finance Corporation's ownership of the property. The trial court denied Johnson's motion for summary judgment and granted Guerra's. In the order granting Guerra's motion, the trial court stated, "This order disposes of all issues in this cause."

## *Discussion*

Guerra moved for summary judgment on one ground—that Johnson could not establish adverse possession because the garage apartment was owned by a governmental entity—Galveston Housing Finance Corporation—during a portion of the applicable ten-year period required for Johnson to establish adverse possession. According to Johnson, Galveston Housing Finance Corporation is not a governmental entity, but even if it were, her predecessors adversely possessed the garage apartment prior to the tax sale, the garage apartment was not part of the tax sale, and Galveston Housing Finance Corporation's ownership did not interrupt the applicable period for adverse possession.

We review summary judgments de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and he is entitled to judgment as a matter of law. *Id.* (citing Tex. R. Civ. P. 166(a)(c)). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). Summary judgment for a defendant is proper only when the defendant

4

negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Hilburn v. Storage Tr. Props., LP*, 586 S.W.3d 501, 506 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Guerra moved for summary judgment on the grounds that Galveston Housing Finance Corporation is a governmental entity and Johnson could not present evidence of continuous use of the garage apartment during the applicable ten-year period required for adverse possession. We first address Guerra's challenge to Johnson's summary judgment evidence. We then discuss the applicable limitations statute and the merits of Johnson's challenges to the summary judgment.

## I.    Challenge to Summary Judgment Evidence Waived

As an initial matter, Guerra challenges an unsworn declaration by Johnson filed in support of her response to Guerra's motion for summary judgment. Guerra contends the declaration is defective because it does not include a jurat or a statement that the declaration is true under penalty of perjury. *See* Tex. Civ. Prac. & Rem. Code § 132.001(c) (requiring unsworn declaration to "be . . . in writing and . . . subscribed by the person making the declaration as true under penalty of perjury"), (d) (requiring jurat to be included with unsworn declaration in substantially correct form). The absence of this language and a jurat are defects in form that must be raised in the trial court. *ACI Design Build Contractors Inc. v. Loadholt*, 605 S.W.3d 515, 517–18 (Tex. App.—Austin 2020, pet. denied) (citing *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (involving defective affidavit)). Guerra did not object to the declaration on this basis in the trial court. Accordingly, he waived this complaint on appeal. *See id.*

## II.  Limitations Period for Adverse Possession

We turn to the applicable limitations period for adverse possession. "Adverse possession" means "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code § 16.021(1). The parties agree that the ten-year limitations period for adverse possession applies in this case. Under that section of the statute, to recover real property held in peaceable and adverse possession, "[a] person must bring suit not later than ten years after the day the cause of action accrues." *Id.* § 16.026(a). If an action for the recovery of real property is barred by the ten-year limitations period, the person who holds the property in peaceable and adverse possession has full title, precluding all claims. *Id.* § 16.030(a). To prevail on the ten-year limitations period in section 16.026, a person claiming possession of property adversely must prove that the person actually and visibly possessed the disputed property, and the possession: (a) was adverse and hostile to the claim of the record title owner; (b) was open and notorious; (c) was peaceable; (d) was exclusive; and (e) involved continuous cultivation, use, or enjoyment for ten years. *Levy v. Leach*, No. 14-19-00843-CV, 2021 WL 4165199, at *4 (Tex. App.—Houston [14th Dist.] Sept. 14, 2021, no pet. h.) (mem. op.); *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

"Visible appropriation" is required; mistaken beliefs about ownership do not transfer title until someone acts on them. *Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006) (per curiam); *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985). Peaceable possession means "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property." Tex. Civ. Prac. & Rem. Code § 16.021(3). The "possession must be of such character as to indicate

unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990).

### III.   Governmental Entity Status

We address Johnson's second issue first, in which she contends that the trial court erred in granting summary judgment on the basis that Galveston Housing Finance Corporation is a governmental entity. Guerra argues that the government is exempt from adverse possession and the statute of limitations for adverse possession was tolled during the time Galveston Housing Finance Corporation owned the garage apartment, thus precluding a finding in Johnson's favor on her adverse possession claim.

Johnson first argues Guerra did not establish as a matter of law that Galveston Housing Finance Corporation is a governmental entity. We disagree. The legislature authorized local governments to create housing finance corporations to "benefit . . . the people of the state" by "improv[ing] public health and welfare, and promot[ing] the economy." Tex. Loc. Gov't Code § 394.002(c), (d). The legislature expressly described a housing finance corporation "as a public instrumentality and nonprofit corporation, [that] performs an essential governmental function on behalf of and for the benefit of the general public, the local government, and this state." *Id*. § 394.002(c)(3). In this connection, a housing finance corporation is an arm of the local government meant "to finance the cost of residential ownership and development that will provide decent, safe, and sanitary housing at affordable prices for residents." *Id*. § 394.002(a). We conclude that Galveston Housing Finance Corporation is a governmental entity as described by the statute.

Johnson contends, however, that even if Galveston Housing Finance Corporation is a governmental entity, real property owned by a governmental

7

entity must also be dedicated to public use to be exempt from adverse possession. She cites section 16.030 of the Civil Practice and Remedies Code, which states, "A person may not acquire through adverse possession any right or title to real property dedicated to public use." Tex. Civ. Prac. & Rem. Code § 16.030(b). While we agree that section 16.030 precludes adverse possession of property dedicated to public use, we do not agree that the statute overrides the longstanding general rule that the State's interest in real property cannot be divested by adverse possession.[3] *See, e.g., Odessa Tex. Sheriff's Posse, Inc. v. Ector Cty.*, 215 S.W.3d 458, 465 (Tex. App.—Eastland 2006, pet. denied) ("[G]overnmental entities . . . cannot be divested of their rights in real property by . . . adverse possession."); *City of Port Isabel v. Missouri Pac. R. Co.*, 729 S.W.2d 939, 945 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) ("[A]dverse possession does not run against the State."); *Capitol Rod & Gun Club v. Lower Colorado River Auth.*, 622 S.W.2d 887, 896 (Tex. App.—Austin 1981, writ ref'd n.r.e.) ("[T]he State's interest in real property cannot be divested by . . . adverse possession."); *Jackson v. Nacogdoches Cty.*, 188 S.W.2d 237, 238 (Tex. Civ. App.—Dallas 1945, no writ) ("It is settled law in this State that title to State lands cannot be acquired by adverse possession."). Johnson's argument is without merit.

Johnson also argues that the City of Galveston and Galveston Housing Finance Corporation are not immune from damages arising from their purchase of the real property at issue in this case. But the City of Galveston and Galveston Housing Finance Corporation are not parties in this case. This argument has no bearing on the question of whether Galveston Housing Finance Corporation's ownership of real property tolled the applicable limitations period for adverse

---

[3] Section 16.030, on its face, is not limited to real property owned by a governmental entity but applies more generally to real property dedicated to public use regardless of the owner. Tex. Civ. Prac. & Rem. Code § 16.030(b).

possession here.

We conclude that the trial court did not err in granting summary judgment on the basis that Galveston Housing Finance Corporation is a governmental entity because Guerra established as a matter of law that it is. Guerra also established as a matter of law that the State's interest in real property cannot be divested by adverse possession. We overrule Johnson's second issue. However, our holding on this issue does not end our inquiry because we must also address Johnson's argument that her predecessors adversely possessed the garage apartment prior to the tax sale, the garage apartment was not sold in the tax sale, and as a result, no governmental entity ever owned the garage apartment.

## IV.    Fact Questions Regarding Continuous Use of Property

Johnson contends in her first issue that there are genuine issues of material fact regarding whether her predecessors adversely possessed the garage apartment prior to the tax sale and whether the garage apartment was sold in the tax sale. According to Johnson, her predecessors adversely possessed the garage apartment from 1973 to 1983, the garage apartment was not included in the tax sale in 1998, and thus it was never acquired by the City of Galveston or Galveston Housing Finance Corporation. Guerra argues that the City of Galveston purchased the garage apartment in the tax sale, the tax sale interrupted any adverse possession by Johnson's predecessors, and the applicable period for adverse possession is between 1998, the date of the tax sale, and 2018, when Guerra purchase the north lot. Guerra asserts that Johnson cannot show continuous or exclusive adverse possession during the time Galveston Housing Finance Corporation owned the north lot from 2006 to 2018.

Whether a person has acquired title to property by ten years of adverse possession typically presents a fact question. *Bywaters*, 686 S.W.2d at 595; *Levy*,

9

2021 WL 4165199, at *5. To establish continuous adverse possession by her predecessors, Johnson would be required to show that her predecessors' possession and claim (1) met the requirements of the statute, (2) were continuous and without interruption, and (3) were passed or transferred to her by agreement, gift, devise, or inheritance. *See Rinn v. Mind Props. LLC*, No. 14-19-00643-CV, 2021 WL 4314452, at *3 (Tex. App.—Houston [14th Dist.] Sept. 23, 2021, no pet. h.) (mem. op.).

Johnson presented evidence in her declaration and in a partition agreement that the subject property was partitioned into the north and south lots in 1973 and divided between Johnson's great grandmother Mary Brown and great aunt Luebirda Wilson. The south lot was conveyed to Brown. Johnson declared that Brown lived in a house on the south lot and rented the garage apartment to tenants. Annie Dean Mack Wilson inherited the south lot in in 1985 as shown in an heirship affidavit filed in the Galveston County real property records. Ruthie Simmons inherited the south lot in 1991 as shown in an affidavit of heirship also filed in the Galveston County real property records. Johnson and Reginald Simmons inherited the south lot in 1999 as also shown in an affidavit of heirship filed in the Galveston County real property records. Simmons conveyed his share in the south lot to Johnson in 2000 as shown by warranty deed. Johnson submitted certified copies of the partition agreement, affidavits of heirship, and applicable deeds.

Guerra presented the sheriff's tax sale deed and the trustee's deed in support of his motion for summary judgment. But Johnson presented evidence that the tax sale of the north lot in 1998 did not include the garage apartment. She submitted tax records dating back to 1989 indicating that the garage apartment was part of the south lot. Her mother, Ruthie Simmons, was listed on the tax records as the owner of the garage apartment. Additional tax records from 1993 through 2018 show that

10

Simmons and subsequently Johnson continuously owned the garage apartment as part of the south lot. In 2018, a handwritten note was placed in the tax records stating that the garage apartment is the "same building assessed on [the north lot]." According to Johnson, the note indicates the taxing authority treated the garage apartment as part of the south lot until 2018. Johnson moreover declared that a combined water meter had been used for both the building on the south lot and the garage apartment until Guerra moved into the garage apartment. This amounts to conflicting evidence regarding whether the tax sale included the garage apartment.

The evidence raises fact questions regarding whether Johnson's predecessors continuously possessed the garage apartment from 1973 until 1983. First, the property was partitioned in 1973, and there is evidence that Johnson's grandmother rented the garage apartment to tenants and passed away in 1985, when Annie Dean Mack Wilson inherited the south lot. Tax records also show that Brown and her descendants continuously owned the garage apartment from 1989 through 2018. Johnson declared that she rented the garage apartment to tenants until 2009 or 2010 and was using the garage apartment for storage at the time Guerra purchased the north lot, in addition to the fact that a combined water meter was used for the house on the south lot and the garage apartment. This evidence presents a fact question as to whether the garage apartment was included in the tax sale.

We conclude that Guerra has not shown on this record as a matter of law that Johnson and her predecessors did not continuously possess the garage apartment for ten years as required to establish adverse possession. Specifically, there are fact questions regarding whether Johnson's predecessors had adversely possessed the garage apartment prior to the tax sale and whether the garage apartment was included in the tax sale. As there are fact questions regarding this issue, we sustain Johnson's first issue. *See Kazmir*, 288 S.W.3d at 561 ("Whether adverse

11

possession has been established is ordinarily a question of fact."). We sustain Johnson's first issue.

## V.    Summary Judgment Improper as to Trespass Claims

We finally address the breadth of the trial court's final summary judgment disposing of all issues in the case. In her opening brief, Johnson contends that Guerra moved for summary judgment on the singular question of whether Galveston Housing Finance Corporation's status as a governmental entity defeated her adverse possession claim. In her reply brief, Johnson asserts that "the trial court's judgment exceeded the relief requested in" Guerra's motion for summary judgment. Ordinarily, we do not consider arguments raised for the first time in a reply brief, but construing Johnson's brief liberally, we conclude that the issue was fairly included in her opening brief because she emphasized the fact that Guerra's motion was based on a singular question challenging her adverse possession claim. *See Williams v. City of Austin*, No. 14-18-00262-CV, 2019 WL 3227513, at *5 n.8 (Tex. App.—Houston [14th Dist.] July 18, 2019, pet. denied) (mem. op.) (considering issue raised for first time in reply brief "in the interest of justice") (citing *Collins v. D.R. Horton-Tex. Ltd.*, 574 S.W.3d 39, 44 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)); *see also Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (requiring courts of appeals to construe appellate briefs "reasonably, yet liberally, so that the right to appellate review is not lost by waiver") (citing Tex. R. App. P. 38.1(f) (requiring appellate courts to consider every subsidiary question that is fairly included in the statement of an issue or point)).

Guerra did not move for summary judgment on his trespass counterclaim or, for that matter, on Johnson's trespass claim. Summary judgments may only be granted upon grounds expressly asserted in the summary judgment motion. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (citing Tex. R. Civ. P.

166a(c)); *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (holding that a motion for summary judgment must expressly present grounds on which it is made). "When a trial court grants more relief than requested and, therefore, makes an otherwise partial summary judgment final, that judgment, although erroneous, is final and appealable." *Magee*, 347 S.W.3d at 298.

Because Guerra did not request affirmative relief or ask for a nonsuit on his trespass claim, it was reversible error for the trial court to render final summary judgment on all claims. *See id.*; *see also Sweet Water Well Serv., LLC v. W. Houston Airport Corp.*, No. 14-18-00596-CV, 2020 WL 5048356, at *3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2020, no pet.) (mem. op.). Such error can be harmless when a claim that was omitted from a motion for summary judgment is precluded as a matter of law by other grounds raised in the case. *Sweet Water Well Serv.*, 2020 WL 5048356, at *3. But the harmless error exception applies under very limited circumstances. *See id.*; *see also PAS, Inc. v. Engel*, 350 S.W.3d 602, 610 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("The application of an exception requires 'a very tight fit' between what was proved or disproved in the motion and what elements must be proved or disproved for the unaddressed claim."). If the omitted claim shares a common element or is derivative to a claim on which summary judgment was properly granted, then the error is harmless. *Magee*, 347 S.W.3d at 296–98; *Sweet Water Well Serv.*, 2020 WL 5048356, at *3.

Here, Guerra was granted final judgment on his affirmative claim for trespass against Johnson even though Guerra did not file a motion for summary judgment on that claim. Guerra asserted that Johnson's adverse possession claim failed as a matter of law, but he did not address his affirmative claim for damages against Johnson. Thus, the trial court's error was not harmless. *See Magee*, 347 S.W.3d at 297–98; *see also Sweet Water Well Serv.*, 2020 WL 5048356, at *3.

Similarly, because the trial court's summary judgment on Johnson's adverse possession claim was not properly granted, the summary judgment on both parties' trespass claims was improper on that basis as well. Accordingly, we reverse the trial court's judgment as to the parties' competing trespass claims.

## *Conclusion*

Concluding that Galveston Housing Finance Corporation is a governmental entity but that Johnson's summary judgment evidence created genuine issues of material fact on her adverse possession claim, we affirm in part and reverse in part the trial court's judgment on that claim. We also reverse the trial court's summary judgment as to both parties' trespass claims. We remand the cause to the trial court for further proceedings consistent with this opinion.

/s/    Frances Bourliot
Justice

Panel consists of Justices Wise, Bourliot, and Zimmerer.

14